IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Marcia S. Krieger

Civil Action No. 17-CV-1773-MSK-MEH

**HILAND HILLS TOWNHOUSE OWNERS ASSOCIATION, INC.,**

    Plaintiff,

*v.*

**OWNERS INSURANCE COMPANY,**

    Defendant.

**OPINION AND ORDER ON THE PLAINTIFF'S STANDING TO BRING SUIT**

**THIS MATTER** comes before the Court upon the Plaintiff's ("Hiland Hills") Motion for Partial Summary Judgment (**# 22**), and the Defendant's response (**# 24**); the Defendant's Motion for Summary Judgment (**# 23**); and the Court's Order to Show Cause (**# 25**) as to why this case should not be dismissed to lack of subject-matter jurisdiction and responses thereto (**## 30**, **31**). For the reasons that follow, the Court concludes that the Plaintiff has standing to bring some, but not all, of its claims. As a result the Plaintiff's Motion for Partial Summary Judgment is denied, as moot, and the stay of briefing on the Defendant's Motion for Summary Judgment is lifted.

### I. BACKGROUND

Hiland Hills owns real property that is the subject of a casualty insurance policy ("the Policy") issued by Defendant Owners Insurance Co. ("Owners"). As discussed more fully below, the Policy has several unusual provisions, most significantly, one requiring the parties to submit disputes about the value of a claimed loss to an appraisal process before Owners is obligated to pay any claim.

1

In 2015, a hail storm that damaged Hiland Hills' property. Hiland Hills filed a claim with Owners more than a year later. Each party then retained an adjuster to inspect the property. Hiland Hills submitted its sworn proof-of-loss statement in May 2017. It filed this suit one month later in a Colorado state court. The case was removed by Owners to this court and the Court exercises jurisdiction based on 28 U.S.C. §1332.

When this suit was filed and removed, Hiland Hills' public adjuster had completed its review of the claim, but Owners' adjuster had not. Owners rejected the proof of loss during the course of this litigation in a September 1, 2017 letter stating that Hiland Hills' delay in submitting its claim made it too difficult to determine what damage was attributable to the June 2015 storm as opposed to subsequent storms.

In its Amended Complaint (*# 9*), Hiland Hills asserts three causes of action: (1) a claim for breach of contract, apparently under Colorado law, in that Owners failed to pay the full amount of benefits called for under the Policy and failed to timely adjust the loss; (2) bad faith breach of insurance contract, apparently under Colorado common law, in that Owners failed to reasonably investigate Hiland Hills' claim, failed to promptly offer and pay the full amount of the claim, and compelled Hiland Hills to initiate litigation; and (3) unreasonable delay and denial of benefits in violation of C.R.S. §§ 10-3-1115 and -1116. The Amended Complaint also seeks declaratory relief "preserving the appraisal remedy", requesting that the Court compel Owners to submit to and proceed with the appraisal process.

Both sides have moved for summary judgment on various matters. Upon initial consideration of those motions, the Court *sua sponte* raised concerns (*# 25*) as to its subject matter jurisdiction, particularly the standing of Hiland Hills to bring a claim for breach of payment obligations under the Policy, given that the appraisal process was a condition precedent

to Owners' obligation to pay and that process had not yet been completed (or even initiated). Hiland Hills responded to the Court's Order by identifying to a number of alleged breaches of the Policy that it contended gave it standing: (1) Owners' refusal to take a position on the claim; (2) Owners' denial of Policy benefits; (3) Owners taking more than 30 days to render a decision on the claim; and (4) Owners' delay as being an intentional attempt to prevent Hiland Hills' compliance with the terms of the Policy.

## II. DISCUSSION

### A. Standing in Federal Courts

As the Court explained in its Order to Show Cause, federal courts are courts of limited jurisdiction,[1] possessing only the authority given to them by the United States Constitution and federal statutes. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Article III of the Constitution restricts the authority of federal courts to the adjudication of actual "cases" and "controversies." U.S. Const. art. III, § 2, cl. 1; *Sprint Commc'ns Co. v. APCC Servs. Inc.*, 554 U.S. 269 (2008). For each claim asserted, a plaintiff must show that there was a "case or controversy" at the time of filing of the lawsuit. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006). Agreements between the parties as to standing or a court's jurisdiction do not create it. *Wilson v. Glenwood Intermountain Props. Inc.*, 96F.3d 590, 593 (10th Cir. 1996).

To have a "case or controversy", the party who seeks relief must have standing. *See Flast v. Cohen*, 392 U.S. 83, 95 (1968). In this case, Hiland Hills must demonstrate, for each claim, that as of the commencement of the suit in June 2017: (1) it had suffered (or would imminently suffer) an "injury in fact" that is concrete and particularized (not merely conjectural or hypothetical); (2) that the injury is fairly traceable to the challenged action of Owners; and (3)

---

[1] This is in contrast to state courts. Typically courts of general jurisdiction, state courts are presumed to have the authority to hear *any* claim arising under federal or state law, except those which Congress or the United States Constitution specifies can be heard only by federal courts.

it is likely, as opposed to merely speculative, that the injury will be redressed by the relief requested. *Friends of the Earth Inc. v. Laidlaw Envtl. Servs. Inc*., 528 U.S. 167, 180–81 (2000); *Tandy v. City of Wichita*, 380 F.3d 1277, 1283 (10th Cir.2004); *Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1154 (10th Cir. 2005). The Court addresses each claim brought by Hiland Hills, but for purposes of analysis, does not address them in the order alleged in the Amended Complaint.

**B. Breach of Contract**

The second claim for relief alleged in the Amended Complaint is for breach of contract, based on Owners' failure to comply with the terms of the Policy. Under Colorado law, a claim for breach of contract requires proof of the following elements: (1) that an enforceable contract existed between the parties; (2) that the plaintiff fully performed its obligations under the contract or that its performance was excused; (3) that the defendant breached its obligations under the contract; (4) that the plaintiff suffered an injury caused by the defendant's breach. *Western Distributing Co. v. Diodosio*, 841 P.3d 1053, 1058 (Colo. 1992). It is undisputed that the Policy is a contract between the parties.

Three provisions in the Policy are pertinent to this claim. First, the Policy's "Commercial Property Conditions" section states:

> **LEGAL ACTION AGAINST US**
>
> No one may bring a legal action against [Owners] under this Coverage part unless:
>
> 1. There has been full compliance with all of the terms of this Coverage Part; and
>
> 2. The action is brought within 2 years after the date on which the direct physical loss or damage occurred.

# 23-3 at 12 (the "Action Clause").

Second, the terms of the "Commercial Property Conditions" of the Policy expressly incorporate the provisions of the "Loss Conditions" section of the Policy. These provisions dictate when Owners is required to make a payment for a covered loss:

> We will pay for covered loss or damage within 30 days after we receive the sworn proof of loss, if you have complied with all of the terms of this Coverage Part and:
>
> (1) We have reached an agreement with you on the amount of loss; or
>
> (2) An appraisal award has been made.

# 23-3 at 7 (the "Payment Clause").

Third, if there is a disagreement as to the amount of loss, either party can invoke the appraisal process:

> If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. . . .
>
> If there is an appraisal, we will still retain our right to deny the claim.

# 23-3 at 6 (the "Appraisal Clause"). In interpreting these provisions, the Court is mindful that Colorado law requires it to construe them according to their ordinary language, absent a showing that the parties jointly intended the language to have a different meaning. *Ace Am. Ins. Co. v. Dish Network LLC*, 883 F.3d 881, 887 (10th Cir. 2018).

The Court begins with the Payment Clause, which specifies when Owners' duty to pay arises. Such duty arises only when two conditions precedent are satisfied. The first condition is that Hiland Hills has "complied with all of the terms of the Coverage Part". The second condition is that the loss has been quantified, either because the parties agreed to its amount or

the amount has been determined through the appraisal process.[2] According to the express terms of the Policy, until both conditions are satisfied, Owners has no obligation to pay.

At the time of the filing of this action, these conditions precedent had not been satisfied: the parties had not neither agreed upon the amount of Hiland Hills' loss, nor had the loss been determined through the appraisal process. Because Owners' duty to pay had not yet arisen, its failure to do so could not constitute a breach of the Policy. Thus, there had been no loss to Hiland Hills that would give it standing to bring a breach of contract claim based on Owners' failure to pay benefits. To the extent that the breach-of-contract claim is premised on non-payment, there is no case or controversy, and it is therefore dismissed.

This does not mean, however, that Hiland Hills has no other grounds for asserting that Owners breached terms of the Policy. Indeed, Hiland Hills alleges that Owners' failed to timely and properly adjust the loss. Although the Amended Complaint does not specify under what provision of the Policy such duties arise, it clearly contends that Owners failed to make timely decisions in assessment of its claim, causing it to seek judicial relief. The loss to Hiland Hills allegedly is in the nature of delay and expense. Thus, Hiland Hills' breach of contract claim is limited to those instances in which Owners' duties both arose and were breached prior to the filing of this suit.

C.  **Bad Faith Breach of Insurance Contract**

Hiland Hills brings two claims for Owners' bad faith breach of the Policy. The first claim is brought under Colorado common law. A claim for common-law bad faith breach of

---

[2] Although the language of the Appraisal Clause states that a party "*may* make written demand for an appraisal," that language does not trump the unambiguous language of the Payment Clause, which *requires* a quantification of loss before Owners' payment obligations accrue. While the provisions might appear to be inconsistent, they can be read in harmony — where the parties cannot reach agreement on the amount of the loss, a party can choose to immediately invoke appraisal process or the party may choose to continue discussing the matter in the hopes that an agreed-upon valuation can eventually be reached.

6

contract is in the nature of a tort. *Nunn v. Mid-Century Ins. Co.*, 244 P.3d 116, 121 (Colo. 2010). To prove a claim for common-law bad-faith breach, Hiland Hills must ultimately establish: (1) that Owners acted unreasonably in its handling of Hiland Hills' claim, (2) that Owners did so knowingly or recklessly, (3) that Hiland Hills suffered an injury, and (4) the injury was caused by Owners' unreasonable conduct. Colo. Pattern Jury Instr. 25:2. The damages available for a bad-faith breach are "based on traditional tort principles," encompassing (in appropriate cases) consequential injuries such as emotional distress. *Goodson v. Am. Standard Ins. Co. of Wis.*, 89 P.3d 409, 416 (Colo. 2004).

Hiland Hills alleges that Owners has acted unreasonably in handling its claim by: (1) failing to acknowledge and act reasonably upon claims communications; (2) failing to implement reasonable standards to ensure prompt investigation of claims; (3) failing to conduct a reasonable investigation; (4) failing to, in good faith, effectuate prompt, fair, and equitable settlement of claims; (5) forcing Hiland Hills to institute litigation to recover amounts due; (6) misrepresenting the terms of the Policy to influence Hiland Hills to settle for less than full benefits; and (7) encouraging its representatives to engage in unspecified unfair claims settlement practices. Allegedly, all of these events occurred and caused Hiland Hills to suffer a loss before June 2017, when this action was filed. The Court will not attempt to ascertain *which* allegations of bad-faith breach Hiland Hills has standing to pursue. It is sufficient to observe that Hiland Hills has standing to pursue at least *some* portion of its bad faith breach claim at this time.

### D. Unreasonable Delay and Denial of Payment of Covered Benefits

Hiland Hills also brings a "statutory bad faith" claim. Under C.R.S. § 10-3-1115, an insurer who delays or denies payment to an insured without a reasonable basis for its delay or denial breaches the duty of good faith and fair dealing. For this claim, Hiland Hills must

7

ultimately prove that: (1) Owners delayed or denied payment of benefits to it, and (2) that delay or denial was without a reasonable basis. Colo. Pattern Jury Instr. 25:4.

This statutory claim differs from a common-law breach claim in several respects. First, the statutory claim is not based upon contract language determining when a payment is due. If an insurer concedes that a loss is covered, but disagrees as to the amount of the loss, the case is properly treated as one for *delay* in the payment of benefits. *Soicher v. State Farm Mut. Auto. Ins. Co.*, 351 P.3d 559, 568 (Colo. App. 2015). Second, the statutory claim does not require proof of actual loss resulting from delay or denial. Rather C.R.S. § 10-3-1116 provides that the remedy in a liquidated sum twice the amount of coverage, plus prejudgment interest, attorney fees, and costs. In accordance with Colorado law, Owners' duties arise under the statute rather than on its performance under the Policy.[3] Because there allegedly is no dispute as to coverage, but there is a dispute as to the amount of loss, Hiland Hills has standing to pursue a claim that Owners unreasonably delayed payment of benefits prior to June 2017.

**E. Declaratory Relief relative to the Appraisal Process**

The first claim in the Amended Complaint and the Motion for Partial Summary Judgment brought by Hiland Hills seek a declaration that the appraisal process is binding on Owners (notwithstanding Hiland Hills' declaration of Owners' breach of other provisions of the Policy terms), that either party can invoke the appraisal process, and that if Hiland Hills were to invoke

---

[3] One might assume that Owners' obligation to pay the disputed value of Hiland Hills' claim does not accrue except as provided by the Payment Clause in the Policy; in other words, the statutory obligation to pay cannot precede the contractual obligation to do so. However, Colorado courts have rejected this argument. In *Fisher v. State Farm Mutual Auto Insurance Co.*, — P.3d —, 2015 WL 2198515 (Colo. App. May 7, 2015), the court rejected the argument that "no benefits are owed [under the statute] until either the parties reach an agreement with respect to the amount of the claimant's damages or the claimant has met his or her burden of proof" on the breach of contract claim. It adopted the conclusion of *Peden v. State Farm Mutual Auto Insurance Co.*, 2014 WL 469401 (D. Colo. Sept. 22, 2014), that "the fact that the benefits owed to [the insured] is currently in dispute does not mean that [the insured's] statutory claim fails as a matter of law."

the Appraisal Clause, Owners must comply. This is essentially a request for specific performance of the Appraisal Clause of the Policy.

Under Colorado law, specific performance is an equitable remedy for a breach of contract. *See, e.g.*, *Forest City Stapleton Inc. v. Rogers*, 393 P.3d 487, 490 (Colo. 2017) ("When parties enter into a contract, they make a series of promises. If a party fails to perform any of these promises, a court may enforce them, either for specific performance or for a money judgment"). Here, however, the only breach of contract claim that Hiland Hills has standing to pursue is for Owners' failure to properly and timely adjust the loss before the filing of this suit. This alleged breach does not pertain to the appraisal process. Hiland Hills did not invoke the Appraisal Clause prior to initiation of the suit and there is no allegation that, before the suit, Owners refused to participate in an appraisal or unreasonably delayed it. It appears that Owners did reject Hiland Hills' proof of loss in September 2017, after the suit was pending, but it appears that the reasons for that rejection were unrelated to the appraisal process or the amount of loss. Because there was no invocation of the Appraisal Clause and no alleged breach of the appraisal provisions of the Policy existing at the time the action was filed, Hiland Hills has no colorable breach of contract claim relating to the appraisal process, and thus no standing to seek a remedy compelling specific performance of the appraisal provisions of the Policy. This claim is therefore dismissed, and Hiland Hill's Motion for Summary Judgment seeking an Order compelling Owners to comply with the Appraisal process is denied, as moot.[4]

---

[4] Although it does not purport to have reviewed the Policy in its entirety, the Court is aware of nothing that prevents Hiland Hills from invoking the Appraisal Clause at this time, outside of this litigation. Under Colorado common law, when a party materially breaches the terms of a contract, the non-breaching party is presented with several options. It may, of course, terminate or seek rescission of the contract; alternatively, it may elect to affirm the contract and continue both sides' performance obligations, seeking damages only for the past breach. *Shotkoski v. Denver Investment Group, Inc.,* 134 P.3d 513, 515 (Colo.App.2006); *Trimble v. City and County of Denver,* 645 P.2d 279, 281

The Court recognizes that Hiland Hills felt compelled to commence this action quickly, perhaps even precipitously, before the claims process had been completed. That urgency is created by the deadline set by the Action Clause, requiring suits for breach to be commenced within 2 years of the loss. Admittedly, it is somewhat curious for the Policy to start a limitation term running before most of the events giving rise to an alleged breach have occurred. That curiousness is exacerbated by the Policy suspending Owners' obligation to pay a claim until it has been fully quantified via an appraisal. In other words, the limitation period begins running relatively early, and Owners' obligation to perform accrues relatively late. An argument could be made that the combination of these provisions produces an absurd result in cases like this: the insured is forced by the limitations period to commence suit on a breach of contract claim that has yet to fully accrue.

However, the terms of the Policy – that is, the terms that the parties have agreed to – are unambiguous in their meaning and operation. Moreover, the Policy's terms do not *inherently* lead to unfair or absurd results. It is quite possible that an insured and insurer could agree to the amount of loss or complete the appraisal process to quantify a loss within the 2 year period from its occurrence, leaving the insured with the ability to timely commence a suit for breach if the insurer refuses to pay the quantified amount. Even in a worst-case circumstance where purposeful delay by the insurer operates to exhaust the limitation period before the loss is quantified (and the duty to pay arises and is breached), the insured has remedies under Colorado

---

(Colo.App.1981), *rev'd in part,* 697 P.2d 716 (Colo.1985). Those options are mutually-exclusive—a party may not, on the one hand, declare the contract terminated and relieve itself from its own future performance obligations and, on the other hand, elect to receive the breaching party's continued performance. *Id.; VLN Corp. v. American Office Equipment Co.,* 536 P.2d 863, 866 (Colo.App.1975). If the non-breaching party chooses to continue to receive the performance by the breaching party, it is deemed to have affirmed the contract and is required to honor its own obligations. *See e.g. Western Cities Broadcasting, Inc. v. Schueller,* 830 P.2d 1074, 1079–80 (Colo.App.1991).

law. Limitation periods can be equitably tolled if misconduct by a defendant causes the period to expire before the plaintiff's claims can be brought. *Morrison v. Goff*, 91 P.3d 1050, 1053 (Colo. 2004). In addition, if there is evidence that, despite the insured's best efforts, the appraisal process could not have been completed with the two-year limitations period, the insured could challenge the Action Clause as unconscionable and urge reformation to have it run from the time of the breach, rather than from the loss. Finally, insureds in Colorado are not limited to common-law breach of contract claims. As is evident in this case, Colorado's common-law and statutory bad faith claims offer remedies that may lie regardless of the particular terms of the Policy.

What the Court is not free to do is to ignore limitations on its jurisdiction in order to accommodate the joinder of all possible future claims in an extant lawsuit. Although economy in litigation is enhanced when all disputes between parties are joined in a single action, the Court is unaware of any statute or other source of authority that empowers it to do more than resolve the "claims and controversies" that exist or are relatively certain to occur at the time of the filing of a diversity action. The Court cannot treat the Policy as a "*res*" over which it exercises "*in rem*" jurisdiction, it cannot supervise the performance of the contract where performance was not demanded prior to the filing of the lawsuit, and it cannot determine disputes that might, but have not yet arisen. Accordingly, the Court dismisses the declaratory/ specific performance claim without prejudice.

### III. CONCLUSION

It is therefore ordered that:

1. Hiland Hills' claims for declaratory relief and breach of contact for failure to pay are dismissed without prejudice for lack of subject-matter jurisdiction. Hiland Hills'

claims for breach of contract due to delay in adjusting the claim, common-law bad faith breach and statutory bad faith breach shall proceed.

2. Because it seeks summary judgment only on a claim now dismissed, Hiland Hills' Motion for Partial Summary Judgment seeking appraisal (**# 22**) is **DENIED AS MOOT**.

3. The Court's order staying the briefing (**# 27**) of Owners' Motion for Summary Judgment (**# 23**) is lifted. Hiland Hills has 21 days to file a response and Owners has 14 days thereafter to file a reply.

Dated this 27th day of April, 2018.

                                          **BY THE COURT:**

                                          *[signature: Marcia S. Krieger]*

                                          Marcia S. Krieger
                                          Chief United States District Judge