## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
### Senior Judge Marcia S. Krieger

Civil Action No. 17-cv-01773-MSK-MEH

HILAND HILLS TOWNHOUSE OWNERS ASSOCIATION,

      Plaintiff,

v.

OWNERS INSURANCE COMPANY

      Defendant.

---

### OPINION AND ORDER

---

**THIS MATTER** comes before the Court pursuant to the Defendant's ("Owners") Motion to Exclude The Testimony of Derek O'Driscoll **(# 82)**, the Plaintiff's ("Hiland") response **(# 85)**, and Owners' reply **(# 86)**.

### FACTS

The facts pertinent to this motion are largely undisputed. Hiland owns a multi-building residential complex in Denver, Colorado. Owners issued a casualty insurance policy covering Hiland's property for events occurring between mid-2015 and mid-2016. During property repairs in 2016, Hiland observed damage to the roofs of some of its buildings. It hired Public Adjuster Derek O'Driscoll, and Mr. O'Driscoll's business, Impact Claim Services, to investigate the possibility of Hiland making a claim on its policy with Owners. Hiland's contract with Mr. O'Driscoll provides that Hiland will pay Mr. O'Driscoll "ten percent from all funds paid by [an insurer] for any recoveries or settlements . . . which result from litigation" of an insurance claim that Mr. O'Driscoll and Impact assisted Hiland with bringing.

1

Mr. O'Driscoll determined that the damage was caused by a hailstorm that occurred on June 24, 2015, within the coverage period of the Owners policy.  In November 2016, Hiland made a formal claim on its policy with Owners in reliance on Mr. O'Driscoll's opinions as to causation and the costs of repairing the damage.  The claims process eventually stalled and Hiland commenced this action against Owners, alleging that, under Colorado law, Owners breached its contract with Hiland, engaged in bad faith breach of contract, and unreasonably delayed in paying benefits.

In this action, Hiland has designated Mr. O'Driscoll as an expert witness. Owners filed the instant motion **(# 82)**, seeking to exclude Mr. O'Driscoll's testimony on several grounds: (i) that Hiland failed to adequately disclose the opinions it intends to present as required by Fed. R. Civ. P. 26(a)(2) and 37; (ii) that Mr. O'Driscoll should be excluded from offering any opinion testimony under Fed. R. Evid. 702 because his contingent fee agreement with Hiland categorically renders any opinion testimony he may give as unreliable; and (iii) that Mr. O'Driscoll's opinions on certain subjects fail to satisfy the requirements of Rule 702 because he lacks the requisite qualifications or because he did not employ a reliable methodology to derive those opinions.

## ANALYSIS

### A.  Fed. R. Civ. P. 26 and 37

#### 1. Sufficiency of disclosures

The Court begins with Owners' argument that Hiland did not adequately disclose Mr. O'Driscoll's opinions.  Fed. R. Civ. P. 26(a)(2) sets forth the information that a party must disclose when identifying its expert witnesses. Subpart 26(a)(2)(B) provides that witnesses who are not "retained or specially employed to provide expert testimony in the case" (that is, "non-

retained experts") are not required to proffer a written report.  Instead, Rule 26(a)(2)(C) requires

that for a a non-retained expert, the party must disclose "the subject matter on which the witness

is expected to present evidence" and "a summary of the facts and opinions to which the witness

is expected to testify."  Fed. R. Civ. P. 26(a)(2)(C)(i), (ii).

In *Roof Rehab, LLC v. Travelers Cas. Ins. Co.,* 2021 WL 5579053 (D.Colo. Nov. 30,

2021) (slip op.), Magistrate Judge Wang observed that "there is scant case law outlining what

constitutes a sufficient disclosure under Rule 26(a)(2)(C)."  Judge Wang provided a cogent

explanation of the Rule 26(a)(2)(C) standard that this Court finds persuasive.  She explains that

an appropriate "summary" of the expert's opinions "need not outline each and every fact to

which the [ ] expert will testify," but the disclosure "should provide a brief account that states the

main points of the entirety of the anticipated testimony."  A disclosure that simply states that the

expert will testify "consistently with certain record documents" or one that refers generally to the

expert's "observations" of a given subject" does not suffice. *Id.* at *2-4.

Here, Hiland first indicated its intention to call Mr. O'Driscoll as an expert in a disclosure

on November 15, 2020.  The entirety of that disclosure reads as follows:

> During times relevant to this case, Mr. O'Driscoll was a licensed
> public adjuster and the principal of Impact Claim Services, LLC
> ("Impact"). Impact was retained by Plaintiff to investigate
> potential hail damages at the Property resulting from the hailstorm
> that occurred during the relevant policy period and assist in
> presentation of a claim to Defendant. Mr. O'Driscoll will testify to
> his observations and investigation of the condition of the Property
> at the times he inspected, the weather and related authoritative
> information he gathered during his investigation, his opinions that
> substantial hail damage had occurred to the property, his estimate
> of the cost to repair or replace the covered damages, and the
> Request for Proposal prepared reflecting the scope of repairs
> in order to solicit qualifying proposals from competent commercial
> building general contractors. His percipient testimony regarding
> his contemporaneous investigation and the opinions formed of the
> cause, cost to repair the damage, and unreasonable claim-handling

> as a result will reflect his knowledge, training, and experience. He is expected to testify consistent with his deposition testimony.

The Court finds that this disclosure fails to comply with Rule 26. It is not a "summary" of Mr. O'Driscoll's opinions at all. Indeed, of the five sentences that comprise the disclosure, the first, second, and fifth sentences are statements of background facts or boilerplate. Only the third sentence pertains to his testimony, but it only catalogues the subjects that he will be asked to address. Most are based on percipient "observations and investigation" and "information that he gathered during his investigation." Other entries mention that Mr. O'Driscoll will testify about his estimate and Request For Proposals but gives no indication as to whether that testimony will be presented as percipient testimony ("Hiland made a claim on Owners for $X") or as an expert opinion on the anticipated costs of repair. To the extent that this sentence discloses that Mr. O'Driscoll's testimony will include opinions, it fails to identify <u>what</u> particular opinions Mr. O'Driscoll holds on these subjects, nor the basic facts that inform those opinions.

Only two sentences suggest that opinion testimony will be presented - "that substantial hail damage had occurred to the property" and about "the cause [and] cost to repair the damage". As to the hail damage, the disclosure does not suggest that Mr. Driscoll will opine as to <u>when</u> the damage occurred, one of the ultimate disputes between the parties as to whether the Policy covers. As to the cause of the damage and cost to repair, no identification of what those opinions are is given. This certainly falls short of disclosing the "main points" of the testimony that Mr. O'Driscoll would give on these subjects. Accordingly, the Court finds that Hiland's November 2020 disclosures regarding Mr. O'Driscoll failed to comply with Rule 26(a)(2)(C).

Hiland argues that, to the extent its November 2020 disclosures were inadequate, it cured those defects in a January 2021 supplemental disclosure concerning Mr. O'Driscoll. The

4

January 2021 disclosures read, in pertinent part, as follows (the Court has underlined those

portions that can be understood to state Mr. O'Driscoll's actual opinions):

> Mr. O'Driscoll is expected to testify to:
>
> 1) his methodology consistent with the Haag Roof Inspector Program among other industry resources (see CV, "Education, Designations & Accreditations" and "Forensic Investigations, Damage Assessment and Meteorological Training") of direct observations and testing to investigate the condition of the Property at the times it was inspected, and his conclusion that the specific buildings identified in the Proof of Loss Presentation had sustained significant damage from hail requiring the repairs identified in the Proof of Loss Presentation;
>
> 2) his conclusions based on the weather and related factual information he gathered during his investigation that substantial hail damage requiring the restoration identified in the Proof of Loss Presentation had occurred to the property during the hailstorm that occurred on June 24, 2015;
>
> 3) his methodology (see CV, "Education, Designations & Accreditations" and "Construction, Building Design, and Construction Cost Estimation Training") of preparation of the estimate of the cost to repair or replace the covered damages, and his conclusion that based on the information learned during his investigation and the information and standards submitted to Owners as part of the Proof of Loss Presentation, it was a reasonable estimate using Xactimate in order to adjust the loss and claim;
>
> 4) his familiarity with industry-accepted and expected standards of claim handling during adjusting in Colorado (see CV, "Education, Designations & Accreditations" and "Claims Adjusting, Insurance Policy Coverage Interpretation and Legal Training"), and his personal knowledge of the parties' adjusting activities, including Owners' noncompliance with industry accepted/expected claim handling standards;
>
> 5) his methodology (see CV, "Construction, Building Design, and Construction Cost Estimation Training") of preparation of the Request for Proposal ("RFP") based on SBSA's opinions and his determination that the RFP reasonably reflects the scope of repairs for purposes of obtaining proposals from competent commercial building general contractors.

5

Although the supplemental disclosures are somewhat more detailed, the Court finds that they also fail to comply with Rule 26(a)(2)(C).  The supplemental disclosures do purport to identify the opinions that Mr. O'Driscoll will present – *e.g.* "specific buildings . . . sustained significant damage from hail"; "the information and standards submitted to Owners . . . was a reasonable estimate" of the damage; "Owners [was] noncomplian[t] with industry accepted/expected claim handling standards" – but again, those opinions are stated at a high level of generality.  In many instances, the supplemental disclosures simply refer the reader to other documents, such as the "Proof Of Loss Presentation" or "Request For Proposal" for further elaboration, rather than identifying any specific opinion Mr. O'Driscoll has.  Those documents have not been presented as part of the record and thus, the Court cannot assess how readily Mr. O'Driscoll's particular opinions can be derived from them.

In *Roof Rehab*, Judge Wang found that an expert disclosure that basically recited that the expert "will testify consistent with his report" failed to comply with Rule 26.  She reviewed the referenced 45-page report, but found that "even when considered in conjunction with Plaintiff's expert disclosures, Plaintiff has not adequately set forth a summary of the facts and opinions to which Mr. Larson is expected to testify."  She noted that the report did "appear to provide some opinions," but that it "primarily sets forth Mr. Larson's voluminous estimated prices of certain materials and labor."  She cited to cases that recognize that by "citing [the expert's] files as a summary of facts, [a party] identifies a large body of detailed information and, thus, fails to provide anything approaching a brief account or statement of the main facts on which his experts will rely." 2021 WL 5579053 at *5*, citing Nicastle v. Adams Cty. Sheriff's Off.*, 2011 WL 1674954 (D. Colo. May 3, 2011) (slip op.).  Without a copy of Mr. O'Driscoll's Proof Of Loss

6

Presentation or Request For Proposal documents, this Court cannot perform the same analysis as

in *Roof Repair*, much less conclude that the documents Hiland refers to disclose Mr. O'Driscoll's

opinions clearly and succinctly.  This Court is left with the conclusion that "citation to records

with no clear indication of what sections will be used or how the facts or opinions will be framed

and presented in testimony" does not suffice for Rule 26 purposes.  *Roof Repair, supra, quoting*

*A.R. by Pacetti v. Corp. of President of Church of Jesus Christ of Latter-Day Saints*, 2013 WL

5462277 (D. Colo. Sept. 30, 2013) (slip op.).  Accordingly, the Court finds that Hiland's

supplemental disclosures also failed to satisfy Hiland's obligations under Rule 26(a)(2)(C).

> 2.  <u>Substantial justification and prejudice</u>

If a party fails to make the expert disclosures required by Rule 26, exclusion of expert

testimony is "not automatic."  *See Turner v. Phillips 66 Co.*, 791 Fed.Appx. 699, 705 (10th Cir.

2019).   Fed. R. Civ. P. 37(c)(1) provides that "[i]f a party fails to provide information or identify

a witness as required by Rule 26(a) . . ., the party is not allowed to use that information or

witness . . . at a trial, unless the failure was substantially justified or is harmless."  The party

proffering the expert – here Hiland – bears the burden of proving that its failure to give adequate

disclosures was either substantially justified or harmless.  *Roof Rehab, supra*.  The question of

whether an inadequate disclosure is "harmless" is evaluated according to the factors set forth in

*Woodworkers Supply Inc. v. Principal Mut. Life Ins. Co*., 170 F.3d 985, 993 (10th Cir. 1999).

Those factors consider: (i) the prejudice or surprise to the party opposing the proffered expert;

(ii) the ability of that party to cure the prejudice; (iii) the extent to which introducing such

testimony would disrupt the trial; and (iv) the proffering party's bad faith or willfulness.  170

F.3d at 993.

The Court finds that Owners has been prejudiced by Hiland's inadequate disclosures. Both Hiland's initial and supplemental disclosures are inadequate to give Owners sufficient notice of the subjects that it intends Mr. O'Driscoll to opine on, the particular opinions Mr. O'Driscoll holds, and the facts that support those opinions. Although the parties are certainly familiar with certain representations that Hiland has made to Owners through Mr. O'Driscoll over the course of Hiland's claim, this Court cannot conclude that Owners is fully apprised of the entirety of Mr. O'Driscoll's opinions that will be offered at trial. Indeed, in reviewing the record supporting this motion, this Court is left with questions about apparent inconsistencies between Mr. O'Driscoll's actions in presenting Hiland's claim to Owners and the opinions Hiland intends to proffer through him. Two examples are illustrative:

First, while acting as Hiland's adjuster and presenting Hiland's claims to Owners in the "Proof Of Loss Presentation" listed in Paragraphs 1 and 3 of Hiland's supplemental disclosures, Mr. O'Driscoll used a software estimating program called Xactimate. Indeed, Paragraph 3 of the supplemental disclosure appears to indicate Hiland's intention to have Mr. O'Driscoll defend the accuracy of his Xactiamte estimate at trial. However, in a deposition in this case in 2020, Mr. O'Driscoll testified that, over time, he has come to recognize that Xactimate is "grossly deficient" and that "now that I have a much greater understanding of Xactimate, I don't use it." *Docket* #82-3 at 31-32, 37.[1] Thus, although Owners might be familiar with the Proof Of Loss Presentation itself, Hiland's disclosures do not allow Owners to know whether Mr. O'Driscoll will opine at trial as to the accuracy of the Xactimate figures in that presentation, and if not, the nature and degree to which Mr. O'Driscoll will now contend that the presentation was incorrect.

---

[1]    Citations to deposition transcripts will use the internal page numbering of the deposition transcript itself, rather than the page numbering of the exhibit as docketed in CM/ECF.

Second, Mr. O'Driscoll seemed to acknowledge that he would prefer to rely upon actual subcontractors' bids for the various tasks to be performed, rather than relying solely on his own estimates of what those tasks might cost. *See Docket* # 82-3 at 86 ("Q: You mentioned that you typically get bids for work to ascertain the accurate value of the loss, right?  A: I don't [ ] think I said typically, I said that's more of our practice now[,] that I'm going to go more for multiple bids from general contractors.")  The record reflects that Mr. O'Driscoll did obtain a bid for repairs of Hiland's roof from a contractor named Academy Roofing – a contractor that Mr. O'Driscoll testified was "capable.  They're capable guys.  I respect Academy, generally."  But Mr. O'Driscoll testified that he did not rely upon Academy's estimate when he prepared Hiland's claim and presented it to Owners:

> Academy's estimate was not included in the claim presentation, at that time.  We opted – we used Xactimate because of several deficiencies, concerns, and **inability to verify certain things within the time period we needed**.  So that estimate didn't meet our standard **at the time**, so it was not included in the claim.  We relied on – on our own estimating and construction experience and using Xactimate.

*Id.* at 83 (emphasis added).  Mr. O'Driscoll's testimony seems to indicate that he chose not to further examine Academy's estimate, nor seek additional estimates from other contractors, because of time pressures requiring him to move quickly to present Hiland's claim to Owners:

> In a situation where I get multiple bids and they're, you know, consistent with my experience or the staff's experience in general of what's compensable under the policy, you glean evidence from that.  In a situation where, just frankly with Hiland Hills and the amount of time we were able to be involved, **we didn't . . . have enough time to do that**.  And so . . . we used our training, education, and experience with Xactimate to try to come up with an  -- a number at the time.

*Id.* at 88 (emphasis added).   Although time pressures in notifying Owners of Hiland's claim might be a justification for Mr. O'Driscoll to have departed from his regular approach for

purposes of preparing Hiland's notice of claim to Owners, those same time pressures would not seem to apply to Mr. O'Driscoll's formulation of his expert opinions for purposes of trial here. Put another way, Mr. O'Driscoll's <u>as an expert</u> has had many years to review records, solicit numerous estimates, and review and clarify questions about those estimates, all without the time pressures that he faced when acting as Hiland's <u>adjuster</u>. As such, it may very well be that Mr. O'Driscoll the <u>expert</u> may disagree with certain approaches or conclusions reached by Mr. O'Discoll the <u>adjuster</u>. Hiland's Rule 26 disclosures give no indication as to whether Mr. O'Driscoll has done so and, if he has, how his opinions about the scope of Hiland's loss have changed since he initially presented Hiland's claim to Owners. Thus, the Court finds that the defects in Hiland's Rule 26 disclosures have prejudiced Owners.

Often times, the prejudice that results from an inadequate disclosure can be cured through a subsequent deposition, allowing the party entitled to notice to question the witness directly about the opinions he or she holds. Although Owners was able to take a deposition of Mr. O'Driscoll in November 2020, that deposition occurred after Hiland's thoroughly inadequate initial disclosures, and before Hiland's supplemental disclosures offered even a modicum of clarification. Thus, the Court cannot conclude that the deposition offered Owners an adequate opportunity to know of, much less fully inquire into the particular opinions that Hiland intends to elicit from Mr. O'Driscoll at trial.

The Court finds that there is a high likelihood that, on the current record, disputes at trial over the scope and content of Hiland's disclosures will be substantial. Mr. O'Driscoll is not a peripheral witness or one proffering a limited scope of opinions. To the contrary, Mr. O'Driscoll is the primary architect of Hiland's claim and his proffered opinions cover a broad range of subjects, from addressing causation to the scope of losses to the reasonableness of Owners'

claims handling. Allowing this case to proceed to trial on the current state of Hiland's disclosures all but guarantees repeated and extensive arguments at trial over whether a given opinion was adequate disclosed by Hiland.

As to the final *Woodworkers* factor, the Court cannot conclude from the record that Hiland's inadequate disclosures were made in bad faith, as opposed to merely being the product of carelessness or superficiality. In any event, good faith alone does not suffice to overcome the other factors. *Jacobsen v. Desert Book Co.*, 287 F.3d 936, 954 (10th Cir. 2002).

This Court then turns to the question of whether it is possible for the prejudice inuring to Owners can now be cured. This case is not yet set for trial, and although the case is already quite old, taking additional time now to resolve this issue is preferable to the more severe sanction of striking Mr. O'Discoll entirely as a witness or forcing Owners to proceed to trial despite the prejudice identified above. The Court finds that Owners' prejudice can be cured through a two-step process.

First, Hiland will be required to make a Rule 26 disclosure that fully conforms to the requirements of the rule. Hiland shall separately enumerate and summarize <u>each</u> opinion it intends to elicit from Mr. O'Driscoll at trial. That summary shall be sufficiently specific to allow identify: (i) the particular opinion being offered, and (ii) the primary facts that Mr. O'Driscoll relied upon in reaching that opinion, *e.g.* "The repairs necessary for Building B amount to $X, based on [the estimate received from Y]/[my determination that the following components need to be replaced at the following costs . . .]"; "In my experience, I have observed that industry-standard claims-handling practices are that a claim will be paid within X days of the insurer's receipt of it. In this case, Owners did not pay any portion of the claim for Y days. . . ." Hiland will make such a disclosure within 30 days of the date of this Order. Any opinions by Mr.

O'Driscoll that are not clearly and conspicuously identified and stated in this disclosure will not be permitted at trial.

Second, Owners may, at its discretion, depose Mr. O'Driscoll regarding the specific opinions identified in the disclosure. Had Hiland made a proper Rule 26 disclosure in the first instance, Owners could have addressed that disclosure during Mr. O'Driscoll's initial deposition and thus, Hiland shall bear the cost of securing Mr. O'Driscoll's appearance at any deposition that Owners may request now. Owners shall notify Hiland within 14 days of Hiland's revised disclosures as to whether it is requesting a deposition of Mr. O'Driscoll and any such deposition shall be taken within 60 days of that notification.[2]

The Court finds that this procedure is sufficient to alleviate any prejudice that Owners has suffered due to Hiland's inadequate Rule 26 disclosures, rendering Hiland's non-compliance with Rule 26 to be harmless. Accordingly, the Court denies Owners' motion to exclude Mr. O'Driscoll's opinion testimony on Rule 26 and 37 grounds.

### B.  Mr. O'Driscoll's contingent fee

Owners argues that Mr. O'Driscoll's expert testimony should be excluded wholesale because Mr. O'Driscoll has a direct financial interest in the outcome of this litigation. As noted above, Mr. O'Driscoll's contract with Hiland provides that Hiland will pay Mr. O'Driscoll 10% of whatever amounts Hiland recovers in this action, whether through settlement or verdict.

---

[2]    Immediately following that deposition (or immediately following Hiland's revised disclosures if Owners elects to not request a deposition of Mr. O'Driscoll), the parties shall contact the Court to schedule a Pretrial Conference and expeditiously move this case to trial.

Owners argues that an expert's direct financial interest in the outcome of the litigation renders that expert's testimony inherently unreliable under Fed. R. Evid. 702 as a matter of law.[3]

Many courts have considered the question of whether an expert who is compensated via a contingent fee arrangement should be allowed to testify. Two distinct analytical strands have developed, although both spring from *dicta* . The first derives from *Tagatz v. Marquette University*, 861 F.2d 1040, 1042 (7th Cir. 1988). There, the court considered the unusual circumstance in which a plaintiff in an employment discrimination case testified, without objection, as his own statistical expert. Because there was no Rule 702 objection at trial, and apparently not even a challenge to the testimony on appeal, the Court of Appeals simply mused briefly about that situation, noting that:

> There is a rule against employing expert witnesses on a contingent-
> fee basis (that is, against paying them more for their testimony if

---

[3]    Hiland argues that Mr. O'Driscoll's opinions are alternatively admissible under Fed. R. Evid. 701. Rule 701 provides that "if a witness is <u>not</u> testifying as an expert, testimony in the form of an opinion" may be admissible if it is "based on the witness' perception, helpful to clearly understanding the witness' testimony or to determining a fact in issue, and not based on [ ] specialized knowledge." (Emphasis added.) "Lay opinions" under Rule 701 are those that are within "common experience" and that "could be reached by any ordinary person." *James River Ins. Co. v. Rapid Funding, LLC*, 658 F.3d 1207, 1214-15 (10th Cir. 2011). In *James River*, the 10th Circuit found that a witness' estimation of the post-fire value of a condemned building was not a lay opinion under Rule 701 because it derived from the witness' knowledge and experience in real estate matters, involved complicated mathematical analysis for items like depreciation, and relied in part on technical analyses prepared by other experts.
Hiland has not identified which of Mr. O'Driscoll's opinions it contends would fall into the category of lay opinions, but Hiland's original and supplemental disclosures expressly indicate that all of Mr. O'Driscoll's designated opinions—opinions about the cause of damage to Hiland's roofs, the costs and processes necessary to remediate that damage, and the claims-handling practices of Owners – derive not from the ordinary and common knowledge but from his specialized knowledge, training, and experience in the fields of construction and insurance adjusting. Thus, it seems doubtful that any of Mr. O'Driscoll's opinions would be admissible pursuant to Rule 701. In any event, Rule 701, like Rule 702, contains a requirement that the proffered opinions must be "helpful" to the factfinder. Fed. R. Evid. 701(b). Opinion testimony that has the potential to be colored by the witness' direct financial interest in the outcome of the case is no more helpful to the trier of fact under Rule 701 than it would be under Rule 702.

> the party that hired them wins), and this rule might be thought to imply that a party—whose "reward" for testifying depends, of course, on the outcome of the suit—is not eligible to be an expert witness. But it is a rule of professional conduct rather than of admissibility of evidence. It is unethical for a lawyer to employ an expert witness on a contingent-fee basis, 3 Weinstein's Evidence ¶ 706[03] at pp. 706–23 to 706–24 (1987), but it does not follow that evidence obtained in violation of the rule is inadmissible. *See United States v. Cervantes–Pachec*o, 826 F.2d 310, 316 (5th Cir.1987) (*en banc*) (concurring opinion).[4] The trier of fact should be able to discount for so obvious a conflict of interest.

861 F.2d at 1042.

Since *Tagatz*, some lower courts have relied upon its reasoning to find that experts who are paid on a contingent basis are competent to testify, and that it is simply up to the factfinder to weigh the extent to which the expert's financial interest in the outcome of the case bears upon the credibility of their testimony. *See e.g. Robinson v. Nationstar Mortgage, LLC*, 2019 WL 4261696 (D.Md. Sept. 9, 2019) (slip op.); *Fletcher v. Doig*, 196 F.Supp.3d 817, 822 (N.D.Il.

---

[4]     *Cervantes-Pacheco* considered whether the government's payments to confidential informants to induce them to obtain evidence of unlawful conduct by certain individuals specifically targeted by the government operated to disqualify the informants from later testifying as witnesses in those cases. It noted that an older case, *Williamson v. U.S.*, 311 F.3d 441 (5th Cir. 1962), "established a *per se* rule that an informant paid a contingent fee is not a competent witness." But *Cervantes-Pacheco* observed that "since *Williamson*[, ] we have riddled the rule with exceptions," and the court decided to formally abrogate the *Williamson* rule entirely, instead holding that "the credibility of the compensated witness . . is for a properly instructed jury to determine." 826 F.2d at 312, 316.

    The concurring opinion of Judge Rubin, for which *Tagatz* cites *Cervantes-Pacheco*, considers the issue more broadly than the panel opinion does. Judge Rubin writes "The employment of a witness for a fee contingent upon victory for the party in whose favor he testifies is a violation of both the Model Rules of Professional Conduct and the Code of Professional Responsibility. Yet, because a person interested in the outcome of a case is a competent witness, experts employed on such a contingent-fee basis have been permitted to testify. No court, so far as I have been able to find, now excludes contingent-fee testimony." He noted that allowing witnesses to be compensated on a contingent basis "patently permits perversion of the trial process," and that he was "therefore troubled by the possible results of our decision," but concurred nevertheless due to the weight of then-existing authority. *Id.* at 316. Needless to say, there is now ample precedent from trial courts excluding contingent fee-based testimony, making Judge Rubin's reasoning less persuasive today.

14

2016); *Turner v. Multnomah County*, 2015 Wl 3492705 (D.Or. June 3, 2015) (slip op.) (collecting cases).

The other approach to the question derives from *Accrued Financial Services, Inc. v. Prime Retail, Inc.*, 298 F.3d 291 (4th Cir. 2002). There, the plaintiff was an entity engaged in the business of "auditing" commercial leases on behalf of shopping mall tenants, looking for violations by the landlord that would entitle the tenants to rent refunds. To effectuate that business, the tenants would preemptively assign any claims they might have against the landlord to the plaintiff, the plaintiff would audit the lease and potentially bring suit, and the plaintiff would then pay a portion of what it recovered back to the tenants. The trial court dismissed the plaintiff's claims against a landlord, finding that the assignment agreement with the tenants was a form of barratry that was contrary to public policy. The Fourth Circuit affirmed. In doing so, it made a passing comment that

> we also conclude that the arrangements are against public policy insofar as they provide for supplying *expert* testimony for a contingent fee. To the extent that AFS employees, as experts on the relationship between landlords and tenants in a commercial context, planned to testify regarding the allegations in this litigation, AFS was offering expert testimony for a contingent fee. Such an arrangement would also violate public policy.

298 F.3d at 300 (emphasis in original).

Several courts have adopted, expressly or impliedly, *Accrued Financial*'s focus on the public policy concerns underlying experts possessing a direct financial interest in the litigation, finding that those concerns justify a wholesale disqualification of the expert. *See e.g. Keystone Transportation Solutions, LLC v. Nothwest Hardwoods, Inc.*, 2019 WL 1756292 (W.D.Va. Apr. 19, 2019) (slip op.); *Perfect 10, Inc. v. Giganews,Inc,*, 2014 WL 10894452 (C.D.Ca. Oct. 31, 2014) (slip op.) (characterizing the *Tagatz* approach as a "notable exception to [the] unanimity"

of cases holding to the contrary); *Straughter v. Raymond*, 2011 WL 1789987 (C.D.Ca. May 9,

2011) (slip op.) ("The Court finds that the better course of action is to exclude the testimony of

expert witnesses in civil cases whose compensation is contingent on the outcome of the case")

(collecting cases); *Andreas Carlsson Production, AB v. Barnes*, 2012 WL 12911049 (C.D.Ca.

July 19, 2012) (slip op.).

The 10th Circuit does not appear to have addressed this situation directly.  It has cited the

pertinent portion of *Tagatz* a single time, in *dicta*.[5]  In *Scheidt v. Klein*, 956 F.2d 963 (10th Cir.

1992), the court considered whether it was error for the trial court to give a jury instruction about

weighing expert testimony, despite the fact that none of the witnesses who testified did so as

experts under Fed. R. Evid. 702.  The Court of Appeals was ultimately persuaded that, to the

extent the jury might have treated that instruction as retroactively draping a mantle of "expert"

on those witnesses who had testified about their professional credentials, any such error was

---

[5]    *Patel v. U.S.*, 399 Fed.Appx. 355 (10th Cir. 2010), could arguably also be read to give
limited approval to the notion of experts being retained on a contingent compensation scheme.
There, the Court of Appeals considered the argument of an *in forma pauperis* prisoner bringing a
medical malpractice claim, whereby the prisoner argued that the trial court had erred by refusing
to retain, at public expense, an expert to testify in support of the prisoner's claims.  The 10th
Circuit affirmed, quoting with approval a 3d Circuit opinion that noted that non-prisoner
plaintiffs often could not afford expert services either and that it would be anomalous to grant
prisoners "better treatment than their fellow citizens who have not been incarcerated."
In doing so, it made the passing observation that "Nonprisoners often resolve that
difficulty through contingent fee retainers with provisions for arranging expert testimony."  399
Fed.Appx. at 359.  It may be that the 10th or 3d Circuits intended that language to describe a
situation where the non-prisoner plaintiff entered into a contingent fee agreement with an
<u>attorney</u>, by which the attorney would advance the costs of retaining an expert and recoup those
costs from the plaintiff's recovery.  In such circumstances, the expert's compensation was <u>not</u>
contingent on the outcome of the case, only the plaintiff's ultimate financial responsibility for
that compensation.  On the other hand, the language is susceptible to at least a superficial reading
that suggests tacit approval of a plaintiff retaining expert witness' services directly on a
contingent fee basis.  Both because the former reading is more plausible than the latter and
because neither *Patel* nor the case it relies upon considered the ethical implications of the matter
further, this Court is inclined to read *Patel* as not offering any support to Hiland here.

16

harmless because both sides presented witnesses of that type – the plaintiff through his tax attorney and the defendant through his own testimony. The defendant had offered a perfunctory and unsupported argument contending that his own testimony as a party was not comparable with that of a non-party witness, because "as parties, neither [the plaintiff nor defendant] could be construed as experts." Citing to *Tagatz* in a footnote as "the only pertinent circuit decision[ ] we have found" on the subject,[6] the 10th Circuit mentioned in passing that the defendant's argument "appear[s] to be an erroneous statement of the law governing the competency of experts," construing *Tagatz* to "uphold the admission of expert testimony related by a party." 956 F.2d at 968 n. 4.

This Court finds a unifying element in both the *Tagatz* and *Accrued Financial* strands of reasoning - that <u>ethical</u> rules governing attorney conduct may specifically prohibit the compensation of experts on a contingent fee basis. In this regard, *Nationstar Mortgage* is instructive. There, the plaintiffs agreed to pay their expert a flat fee, but that payment was made contingent upon the court granting the plaintiffs' class certification motion. In denying the defendant's motion to exclude the expert's testimony, the court acknowledged that Maryland's ethical rules "prohibit[ ] an attorney from 'offer[ing] an inducement to a witness that is prohibited by law'," and that "the common law rule in most jurisdictions is ... that it is improper to pay an expert witness a contingent fee." But it noted that Maryland had not actually adopted that common-law rule and, in fact, had previously amended its ethical rules to <u>remove</u> language that expressly prohibited contingency fee arrangements for experts. Thus, it concluded that it

---

[6]    *Scheidt* was decided before the 4th Circuit's decision in *Accrued Financial*, and thus, the 10th Circuit's statement that *Tagatz* was the only circuit precedent on the issue was a correct one at the time.

was not contrary to Maryland's public policy to allow an expert paid on a contingent fee basis to testify.  2019 WL 4261696 at *11.

By contrast, Colorado's Rules of Professional Conduct clearly and unambiguously express a public policy against allowing testimony from experts being paid on a contingent fee. Like Maryland' rules, Colorado Rule of Professional Conduct 3.4(b) states that a lawyer shall not "offer an inducement to a witness that is prohibited by law."  But Comment [3] to the Colorado rule clarifies that "It is improper to pay any witness a contingent fee for testifying."  Thus, Colorado's ethical rules leave no room for doubt that testimony by witnesses paid a contingent fee is prohibited.[7]

Nevertheless, Colorado's Supreme Court has considered the identical issue presented here and reached a sort of middle ground between *Tagatz* and *Accrued Financial*.  In *Murray v. Just In Case Business Lighthouse, LLC*, 374 P.3d 443 (Colo. 2016), the defendant retained an individual named Sumner to assist it with ongoing litigation by reviewing business records and collecting data.  The defendant's agreement with Sumner called for Sumner to be paid "a ten percent interest in the case," tying that compensation directly to the amount that the defendant might recover on its counterclaims.  Later, the defendant designated Sumner as its expert witness on the issue of business valuation and the plaintiff moved to preclude Sumner from testifying,

---

[7]     This Court need not opine as to whether Mr. Mammel, Hiland's counsel, has  violated Rule 3.4(b) by proffering Mr. O'Driscoll as an expert witness.  The Rules of Professional Conduct proscribe conduct by <u>attorneys</u>, and it is clear that it is <u>Hiland</u>, not Mr. Mammel, that entered into the contingent fee agreement with Mr. O'Driscoll.  At the same time, it seems inarguable that Mr. Mammel knew of the contingent nature of Mr. O'Driscoll's fee agreement with Hiland at the time that Mr. Mammel chose to designate Mr. O'Driscoll as an expert for Hiland.  It would be unreasonable to suggest that an attorney can accomplish an act prohibited by the ethical rules simply by having his or her client perform the act instead.  Ultimately, however, the question of ethical propriety of Mr. Mammel's designation of Mr. O'Driscoll as a witness in this case is a matter for a different tribunal than this one.  *See Murray*, *infra*., 374 P.3d at 340 n. 5.

18

citing Rule 3.4(b).  The trial court granted the motion in part, precluding Summers from offering

expert testimony, but allowing him to offer factual testimony and lay opinions.  On appeal, the

Colorado Supreme Court agreed that the payment arrangement with Sumner violated Rule

3.4(b).  But as in *Tagatz*, the Supreme Court recognized that ethical rules and evidentiary rules

are not necessarily coterminus, and that "the prohibition on paying witnesses a contingency fee

for their testimony does not necessarily mean that those witnesses may never testify at trial."

374 P.3d at 450 (emphasis in original).  At the same time, the court did not necessarily agree

with *Tagatz*'s belief that the jury's weighing of an expert's credibility was all the balm that was

needed to soothe any ethical concerns arising from the expert's testimony.  Instead, the Colorado

Supreme Court explained that a *per se* rule allowing or excluding such testimony was

inappropriate, and the trial court should exercise the balancing test of Colorado's equivalent to

Fed. R. Evid. 403, mindful of Rule 3.4(b)'s goal of "protect[ing] the integrity of trials by

preventing lawyers from improperly inducing witnesses to offer biased testimony."  Ultimately

the question of whether an improperly-compensated expert may testify is left to the sound

discretion of the trial court, to be determined on a case-by-cast basis, based on the reliability of

that testimony under all the circumstances.  374 P.3d at 450-52 ("Trial courts may exclude the

testimony of witnesses compensated in violation of RPC 3.4(b), but they need not always do so")

(emphasis in original).

This Court finds that *Murray* provides the best template for resolving Owners'

categorical challenge to Mr. O'Driscoll's designation as an expert.  Both the *Tagatz* and *Accrued

Financial* decisions agree that the question of whether an expert with a financial interest in the

case should be allowed to testify is, at least in significant part, an ethical issue for the attorney

proffering the testimony.  Ethical standards are both established and interpreted by states, and

thus, a state's interpretation of its own ethical rules is a powerful indicator of how federal courts should apply those standards.[8]   Colorado clearly uncouples the ethical question of whether it is proper for an attorney to proffer a financially-interested expert from the evidentiary question of whether that expert's opinions are admissible.  Instead, the question is whether the expert's opinions survive scrutiny under the Fed. R. Evid. 403 balancing test.

Owners' motion does not materially address the Rule 403 inquiry, instead relying strictly on a *per se* rule of exclusion that *Murray* and this Court reject.  Without a meaningful Rule 403 presentation, this Court is not in position to make any findings, one way or another, as to whether Mr. O'Driscoll's opinion testimony should be admitted, in part or whole.  To be sure, the Court has significant concerns about the reliability of Mr. O'Driscoll's testimony, concerns beyond the ordinary problems inherent to witnesses having a direct financial interest in the testimony they offer.  The record in this case reflects that Mr. O'Driscoll is not simply an otherwise arm's-length witness that agreed to offer his expertise on a contingent basis due to Hiland's inability to compensate him on an hourly or flat fee basis.  Mr. O'Driscoll was the primary architect of Hiland's claim on Owners in the first instance, and thus, has a vested interest in continuing to defend the accuracy of the work that he performed in preparing that claim in 2016 and 2017.  However, as discussed above, by Mr. O'Driscoll's own admission, the manner in which he would approach those same issues today is different than what he did then.  Mr. O'Driscoll's status as both Hiland's adjuster and Hiland's designated expert could have the effect of either requiring Mr. O'Driscoll to repudiate his earlier work as being unreliable by modern standards,

---

[8]      This Court further notes that its subject-matter jurisdiction here derives from the diversity of the parties' citizenship and that the Court is charged with applying Colorado' substantive state law in this case.

or to attest to the accuracy of his earlier work despite the fact that it was not prepared according to the methods that he now uses in his everyday practice.  Both situations lead to questions about the reliability of Mr. O'Driscoll's testimony.

Moreover, the Court is compelled to comment on the degree to which the record discloses an atypical and unusually close relationship between Mr. O'Driscoll and Hiland's counsel in this case, Mr. Mammel and the Merlin Law Group.  Mr. O'Driscoll's CV identifies his "Claims Adjusting, Insurance Policy Coverage Interpretation and Legal Training" credentials.  Among the training programs Mr. O'Driscoll lists are more than a dozen training programs presented by the Merlin Law Group itself.  *Docket* # 85-3 at 4-6.  Although some of those presentations involve matters entirely unrelated to this case – *e.g.* "Wildfire Claims 101," "Practical Aspects to Protect Hurricane Irma Awards" – others would seem to have direct application to this issues in this litigation, *e.g.* "Decoding Hail Damage Insurance Denials," "Understanding Roofs: How To Talk About Roofs With The Insurance Adjuster."  Even more telling is Mr. O'Driscoll's list of trainings under the heading "Forensic Investigations, Damage Assessment and Meteorological Training" in his CV.  *Id.* at 6-9.  That category discloses numerous Merlin Law Group-provided trainings on issues that are directly applicable to the opinions Mr. O'Driscoll is designated to offer in this case, including "Analysis of Meteorological Reports, Cosmetic vs. Functional Damage Thresholds of Hail Damage," and "Meteorology of Major Hailstorms in 2015 & 2016."  Merlin Law Group also provided Mr. O'Driscoll with training in how to devise repair estimates in seminars entitled "Professional Estimating vs. Standard Estimating Practices" and "Building Cods and the Reconstruction Environment."  *Id.* at 9-10.  It is difficult to dispel the concerns that the opinions Mr. O'Driscoll is presenting as an expert here are specifically derived from training he has received from Hiland's counsel,

effectively putting counsel's words in Mr. O'Driscoll's mouth to then be presented to the factfinder as testimony by an expert.

Mr. O'Driscoll's close relationship with Mr. Mammel is further exemplified by the fact that Mr. O'Driscoll testified that he has referred his clients to Mr. Mammel. *Docket # 82-3* at 184-85. Mr. O'Driscoll's CV lists those cases in which he has given testimony in or testified as an expert witness. *Docket # 85-3* at 3-4. Of the 14 unique cases listed (including the instant case), 11 are cases that were filed in this District, and the Court takes judicial notice that its docket records reveal that Mr. Mammel appeared as counsel to the insured in 9 of those 11 cases, and a different attorney from the Merlin Law Group appeared on behalf of the insured in a 10th case. Each of these facts lends weight to a conclusion that Mr. O'Discoll's interest in this case extends far beyond the already ethically-dubious status of having a direct financial interest in the outcome of the case, and into the realm where Mr. O'Driscoll's ability to give reliable opinion testimony, free of influence from Mr. O'Driscoll's own business affairs, is in considerable doubt.

Nevertheless, as noted above, the parties' briefing does not specifically address the Fed. R. Evid. 403 balancing test and this Court will not make particular findings on the Rule 403 question at this time. Rather, that question, like most Rule 403 challenges, will be deferred to the time of trial. Accordingly, the Court denies, without prejudice, Owners' motion to exclude Mr. O'Driscoll's testimony due to his contingent fee agreement with Hiland. Owners may raise that issue when and if Hiland seeks to call Mr. O'Driscoll as an expert at trial.

### C. Owners' remaining objections

Owners challenges the admissibility of several of Mr. O'Driscoll's opinions, contending that those opinions fail to satisfy the four foundational elements of Rule 702. The Court finds that, in large part, both sides' arguments on these issues are often presented in general terms

without adequate supporting evidence.  As a result, many of the Court's rulings on those arguments would essentially be decided against the party with the corresponding burden of proof, rather than on the actual underlying merits of the facts of this case.  Because the question of what specific opinions Hiland will designate for Mr. O'Driscoll remains to be seen in its revised disclosures, and because the basis of Mr. O'Driscoll's opinions may still be explored in any deposition by Owners, the Court declines to address Owners' specific Rule 702 arguments at this time.  Owners may raise those arguments at an appropriate time prior to or during trial.

## CONCLUSION

For the foregoing reasons, Owners' Motion to Exclude Mr. O'Driscoll's Testimony **(# 82)** is **GRANTED IN PART** and **DENIED IN PART** as set forth herein.

Dated this 8th day of February, 2022.

**BY THE COURT:**

_____

Marcia S. Krieger
Senior United States District Judge